Opinion for the court filed by Circuit Judge RADER. Concurring opinion filed by Circuit Judge GAJARSA.
RADER, Circuit Judge.
Following a bench trial, the United States District Court for the Northern District of Illinois determined that the generic paroxetine hydrochloride anhydrate *1334 product to be produced by Apotex Corp., Apotex, Inc., and TorPharm, Inc. (collectively Apotex) will not infringe claim 1 of U.S. Patent No. 4,721,723 (’723 patent) owned by SmithKline Beecham Corp. and Beecham Group, P.L.C. (collectively SmithKline). SmithKline Beecham Corp. v. Apotex Corp., 247 F.Supp.2d 1011, 1052 (N.D.Ill.2003). Based on this court’s revision of the trial court’s erroneous claim construction, Apotex’s product would infringe claim 1 of the ’723 patent. Nonetheless, because claim 1 of the ’723 patent is invalid as anticipated under 35 U.S.C. § 102(b), this court affirms the district court’s judgment in favor of Apotex.
I.
In the late 1970s, a British company, Ferrosan, invented a new class of compounds, including a compound that became known as paroxetine. See U.S. Patent No. 4,007,196 (’196 patent). The ’196 patent claims paroxetine and its salts and discloses their antidepressant properties. Ferrosan eventually developed a process to produce the crystalline hydrochloride salt of paroxetine, or paroxetine hydrochloride (PHC). In 1980, Ferrosan licensed the ’196 patent and its other PHC-related technology to SmithKline. SmithKline began manufacturing PHC in its Harlow plant in England.
In March 1985, Alan Curzons, a chemist in SmithKline’s Worthing, England laboratory, discovered a new crystalline form of PHC while attempting to improve PHC production. Curzons’s test results established that the new product was the hemihydrous form of PHC (PHC hemih-ydrate). Ferrosan’s original form was anhydrous PHC (PHC anhydrate). PHC anhydrate comprises crystals of PHC without bound water molecules. PHC hemihydrate comprises PHC crystals with one bound water molecule for every two PHC molecules. PHC hemihydrate proved more stable, and thus more easily packaged and preserved, than PHC an-hydrate.
SmithKline filed a patent application in the British Patent Office on October 25, 1985 relating to “crystalline paroxetine hydrochloride, its preparation and its uses as a therapeutic agent.” The British application identified the invention as both the hemihydrate and the anhydrate form of PHC, as well as mixtures that contain a major portion of either form. One year later, on October 23,1986, SmithKline filed a U.S. application claiming priority to the British application that issued as the ’723 patent in 1988. The ’723 patent does not claim PHC anhydrate and does not claim mixtures of the two PHC forms. The only claim at issue in this case is claim 1, which reads in its entirety: “Crystalline paroxe-tine hydrochloride hemihydrate.”
In 1993, after completing the necessary FDA approval process, SmithKline placed its antidepressant drug with PHC hemih-ydrate as the active ingredient on the market under the name Paxil®. In 1998, TorPharm, Inc., an Apotex affiliate and manufacturer of Apotex’s generic antidepressant, filed an Abbreviated New Drug Application (ANDA) with the FDA, under 21 U.S.C. § 355(j), seeking approval to market its own PHC antidepressant drug. Apotex identified the active ingredient in its antidepressant as PHC anhydrate. Apotex’s ANDA included a paragraph IV certification, see 21 U.S.C. § 355(j)(2)(A)(IV), that indicated Apotex’s intent to market the drug before the expiration of the ’723 patent because its drug would not infringe that patent.
In 1998, SmithKline initiated this infringement action against Apotex under 35 *1335 U.S.C. § 271(e)(2) on the basis of Apotex’s ANDA filing. SmithKline alleges that Apotex’s proposed drug will infringe claim 1 of the ’723 patent. SmithKline does not allege that claim 1 of the ’723 patent covers PHC anhydrate. After all, PHC an-hydrate — the Ferrosan discovery — is prior art for the ’723 patent. SmithKline asserts that Apotex will infringe by manufacturing PHC anhydrate tablets that necessarily contain, by a conversion process discussed below, at least trace amounts of PHC hemihydrate.
The parties filed various summary judgment motions, including cross motions for summary judgment that claim 1 of the ’723 patent was invalid (or valid) under 35 U.S.C. § 102(b) for an impermissible public use. The § 102(b) motions acknowledged that clinical trials occurred more than one year before SmithKline’s filing date for the ’723 patent, but disputed whether those tests qualified for the experimental use negation. The district court denied Apotex’s motion and granted SmithKline’s motion, holding that the ’723 patent was not invalid for public use under § 102(b). The district court reasoned that the clinical trials qualified as experimental uses. See SmithKline Beecham Corp. v. Apotex Corp., 286 F.Supp.2d 925, 932-38 (N.D.Ill.2001).
The district court then held a bench trial to determine the proper interpretation of claim 1 and to resolve the remaining infringement and validity issues. On the question of claim construction, the district court limited claim 1 to PHC hemihydrate in commercially significant amounts. SmithKline Beecham Corp., 247 F.Supp.2d at 1030. The trial record contained uncontested testimony that a PHC anhydrate-hemihydrate mixture would need to possess a percentage of PHC hemihydrate in the “high double digits” if the hemihydrate component were to contribute any commercial value. Id. The district court imported that commercial significance into the claim and held that Apotex’s proposed PHC drug will not infringe claim 1 of the ’723 patent. The district court found, as a factual matter, that Apotex’s PHC anhydrate tablets will not contain commercially significant amounts of PHC hemih-ydrate and rejected SmithKline’s evidence to the contrary. Id. at 1031-39. The trial court also determined that claim 1 is not invalid.
SmithKline contested the district court’s claim interpretation noting that claim 1 is clear on its face and encompasses PHC hemihydrate in any amount, however small or insignificant. In rejecting that proposed claim interpretation, the district court also opined that SmithKline’s proposed construction would render claim 1 indefinite. The district court reasoned that SmithKline’s interpretation would place potential infringers in the untenable position of never knowing whether their product infringes because even a single undetectable crystal of PHC hemihydrate would infringe. Id. at 1029-30.
To show that manufacture of PHC an-hydrate tablets necessarily creates PHC hemihydrate, SmithKline proffered expert testimony on the so-called “seeding” or “disappearing polymorph” theory. Under this theory, Ferrosan may have originally created a crystalline compound, namely PHC anhydrate, in a relatively unstable form. For presently unknown reasons, the PHC anhydrate “morphed” into a more stable form, namely the PHC hemih-ydrate discovered in SmithKline’s facilities. With this new form or polymorph in existence, SmithKline’s experts explained, the general environment became “seeded” *1336 with crystals of PHC hemihydrate. In this seeded environment, the PHC anhyd-rate converts to the PHC hemihydrate upon its inevitable contact with seeds of PHC hemihydrate. In other words, the creation of pure PHC anhydrate became extremely difficult, if not impossible; the old polymorph, PCH anhydrate, has effectively disappeared in its pure form because it changes naturally into the new poly-morph, PCH hemihydrate.
SmithKline’s experts applied the “disappearing polymorph” theory to show that Apotex’s PHC anhydrate tablets inevitably convert to hemihydrate when combined with moisture, pressure, and practically ubiquitous PHC hemihydrate seeds. The district court found that SmithKline’s evidence on the “seeding” and the “disappearing polymorph” theories supported the inference that Apotex’s PHC anhyd-rate tablets will contain at least trace, even if undetectable, amounts of PHC hemihyd-rate. Id. at 1042-43. Thus, under Smith-Kline’s claim construction, the district court held that Apotex’s PHC anhydrate drug would infringe claim 1 of the ’723 patent. Id.
Alternatively, if claim 1 was construed to cover any amount of PHC hemihydrate and was, therefore, infringed, the district court purported to create a new equitable defense to infringement in favor of Apotex. Id. at 1043-45. Under this new defense, SmithKline was responsible for producing the hemihydrate, which, by virtue of SmithKline’s “disappearing polymorph” theory, seeded the environment. Consequently, SmithKline caused the alleged infringement. The district court reasoned that Apotex should enjoy the right to practice the prior art by manufacturing PHC anhydrate. Accordingly, under its alternative equitable defense, the district court absolved Apotex of liability for the consequences of SmithKline’s own conduct that rendered the practice of the prior art impossible without infringing the ’723 patent. The district court also held that its inherent equitable powers and the equitable nature of injunctions in general placed the injunction mandated by 35 U.S.C. § 271(e)(4)(A) within the discretion of the district court. Id. at 1045-52.
SmithKline also sought to assert a claim of induced infringement against Apotex on the theory that PHC anhydrate tablets convert to PHC hemihydrate in the stomach of a patient due to the increased humidity and pressure present inside the stomach. Id. at 1014-15. The district court excluded SmithKline’s evidence on this issue, finding that SmithKline would likely not meet its burden of showing “gastrointestinal infringement.” Id. at 1014-15. Finally, the district court considered other alternative claim constructions, which would allow claim 1 to cover PHC hemihydrate in amounts detectable either by methods available at the time the ’723 patent was filed or by any means that later became available. Id. at 1052. The record shows that SmithKline presented the results of tests on various samples of Apo-tex tablets. These tests showed PHC hemihydrate in the Apotex product. The district court rejected this evidence as unreliable, mainly because SmithKline’s counsel excluded certain tablets from the testing without reasonable explanation. Id. at 1032-42. The trial court found these excluded tablets to represent the product Apotex would manufacture upon ANDA approval. Id. Accordingly, the district court held that SmithKline did not prove that Apotex’s tablets will contain any detectable amount of PHC hemihyd-rate.
SmithKline presents five arguments on appeal. First, the district court erred in *1337 limiting claim 1 to commercially significant amounts of PHC hemihydrate. Second, contrary to the district court’s ruling, a claim construction that covers PHC hemih-ydrate in any amount does not render claim 1 indefinite. Third, the district court erred in creating an equitable defense to infringement based on SmithKline’s contribution to causing the infringement. Fourth, the district court erred in holding that the injunctive relief required under 35 U.S.C. § 271(e)(4) is within the district court’s discretion. Fifth, the district court abused its discretion in excluding Smith-Kline’s evidence of induced infringement.
In its cross-appeal, Apotex argues that the district court erred in granting summary judgment that SmithKline’s clinical tests qualified as an experimental use. In particular, Apotex asserts that claim 1 of the ’723 patent is invalid for public use under 35 U.S.C. § 102(b) as a matter of law. This court has jurisdiction over these appeals under 28 U.S.C. § 1295(a)(1).
II.

Standards of Review

This court reviews summary judgments without deference. See Beech Aircraft Corp. v. EDO Corp., 990 F.2d 1237, 1245 (Fed.Cir.1993). Of course, a denial of summary judgment, by itself, is not a final judgment amenable to appeal like a grant of summary judgment. However, when both parties move for summary judgment, each motion “must be independently assessed on its own merit.” California v. United States, 271 F.3d 1377, 1380 (Fed.Cir.2001). In such circumstances, this court reviews summary judgment under the standard rules of Fed. R. Crv. P. 56.
In this case, both parties sought summary judgment; the district court granted one and denied the other. Thus, the record shows that the parties conceded, and the district court found, that no material factual issues remain in dispute. See Beech Aircraft, 990 F.2d at 1245. If this court determines that no material facts remain in dispute, it may proceed to determine entitlement to judgment under the law. See Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 962 (Fed.Cir.2001) (“[RJeversal is required if the district court ‘engaged in a faulty legal analysis in applying the law to the facts and a correct application of the law to those facts might bring a different result.’ ” (quoting Litton Indus. Prods., Inc. v. Solid State Sys. Corp., 755 F.2d 158, 164 (Fed.Cir.1985))); see also Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
This court reviews a district court’s judgment following a bench trial for errors of law or clearly erroneous findings of fact. See Allen Eng’g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 1343-44 (Fed.Cir.2002). Patent infringement proceeds under a two-step analysis. First, the court interprets the claims to determine their proper scope and meaning. See Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed.Cir.1998) (en banc). Next, the court measures the accused product or process against the standard of the properly interpreted claims. Id.
This court reviews claim construction without deference. See Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed.Cir.1995) (en banc), aff'd, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). This court reviews the second step, measurement of the accused product or process against the claim, as a question of fact. See Allen Eng’g, 299 *1338 F.3d at 1343-44; Gen. Mills, Inc. v. Hunt-Wesson, Inc., 103 F.3d 978, 981 (Fed.Cir.1997). The review of indefiniteness under 35 U.S.C. § 112, paragraph 2, proceeds as a question of law without deference. See Solomon v. Kimberly-Clark Corp., 216 F.3d 1372, 1377 (Fed.Cir.2000); Personalized Media Communications, LLC v. Int’l Trade Comm’n, 161 F.3d 696, 702 (Fed.Cir.1998).

Factual Findings

As an initial matter, this court holds that the record, for the most part, supports the district court’s factual findings. In particular, the district court did not clearly err in concluding that Apotex’s PHC anhyd-rate product will include trace amounts of PHC hemihydrate based on the record evidence that the anhydrate form inevitably changes into the hemihydrate form. See SmithKline Beecham Corp., 247 F.Supp.2d at 1019-23.
The district court also did not clearly err in finding that Apotex’s anhydrate product will not contain detectable quantities of PHC hemihydrate because SmithKline selectively tested the Apotex samples without explaining its reasons for excluding some Apotex products from the examination. Specifically, the district court’s discretionary exclusion of Smith-Kline’s unreliable evidence on this issue does not render the subsequent factual finding clearly erroneous.
Although the district court clearly accepts as true the theories of “disappearing polymorphs” and “seeding,” it did not make findings of fact regarding precisely how or when PHC hemihydrate first came into existence. Indeed, traces of PHC hemihydrate in PHC anhydrate pills were not detectible in amounts less than five percent before 1985. However, Curzons undisputedly made his serendipitous discovery of PHC hemihydrate while making PHC anhydrate presumably pursuant to the teachings of the ’196 patent. Moreover, although Curzons does not claim to have discovered PHC hemihydrate until March 1985, further review of samples of SmithKline’s PHC anhydrate revealed that SmithKline’s Harlow plant had unwittingly made PHC hemihydrate as early as December 1984. These undisputed facts conclusively establish that PHC anhydrate made in accordance with the ’196 patent converts into PHC hemihydrate both with and without seeding. Accordingly, this court decides the legal issues in this appeal against the factual background as determined by the district court.

Claim Construction & Indefiniteness

Claim interpretation requires the court to ascertain the meaning of the claim to one of ordinary skill in the art at the time of invention. ResQNet.com, Inc. v. Lansa, Inc., 346 F.3d 1374, 1378 (Fed.Cir.2003); Phillips Petroleum Co. v. Huntsman Polymers Corp., 157 F.3d 866, 871 (Fed.Cir.1998). This task requires the court to place the claim language in its proper technological and temporal context. The best tools for this enterprise are the various forms of intrinsic evidence and, when appropriate, extrinsic evidence. See Vitronics, Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed.Cir.1996). The intrinsic evidence, “i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history ... is the most significant source of the legally operative meaning of disputed claim language.” Id.
Of course, at all times, the language of the claims governs their scope *1339 and meaning. See Dow Chem. Co. v. Sumitomo Chem. Co., 257 F.3d 1364, 1372 (Fed.Cir.2001). Unless the intrinsic evidence compels a contrary conclusion, the claim language carries the meaning accorded those words in the usage of skilled artisans at the time of invention. See id.; Vitronics, 90 F.3d at 1582.
As stated earlier, claim 1 of the ’723 patent reads: “Crystalline paroxe-tine hydrochloride hemihydrate.” This language is not ambiguous but rather describes a very specific compound. The record repeatedly shows that artisans in this area of technology at the tipie of invention would have understood that the claim embraces PHC hemihydrate without further limitation.
The inquiry proceeds to the remainder of the intrinsic record to determine if the patent applicant gave these unambiguous words some unexpected definition. The district court limited claim 1 to commercially significant amounts of PHC hemihydrate. The trial court found support for this limitation in portions of the ’723 patent that discuss the pharmaceutical and commercial properties of PHC hemihydrate. SmithKline Beecham Corp., 247 F.Supp.2d at 1029-30. For example, the specification discusses the superior handling properties of the hemihydrate form that improve the manufacture of PHC. Those references, however, do not redefine the compound in terms of its commercial properties, but emphasize that the new compound exhibits favorable characteristics. A description of characteristics does not redefine a compound with an established and unambiguous structural definition.
Moreover, nothing in the ’723 patent limits that structural compound to its commercial embodiments. Rather, the ’723 specification discloses PHC hemihydrate as a compound without reference to its commercial applications. For example, the specification states that the “present invention provides crystalline paroxetine hydrochloride hemihydrate as a novel compound.” ’723 patent, col. 1, II. 57-58. Furthermore, nothing in the prosecution history of the ’723 patent defines the invention in terms of commercially significant quantities. Thus, reading claim 1 in the context of the intrinsic evidence, the conclusion is inescapable that the claim encompasses, without limitation, PHC hem-ihydrate — a crystal form of paroxetine hydrochloride that contains one molecule of bound water for every two molecules of paroxetine hydrochloride in the crystal structure.
The district court openly discussed the policies that led to its insertion of commercially significant quantities as a limitation on the meaning of the claimed compound. SmithKline Beecham Corp., 247 F.Supp.2d at 1028-30. The district court observed that a claim construction that covers trace amounts of PHC hemih-ydrate would likely preclude attempts to make the prior art PHC anhydrate compound. Id. After explaining the “in terro-rem effect” of such a “broad” claim construction, the district court rejected the literal scope of claim 1 because it would produce “absurd results” and would “not serve any policy of patent law.” Id. Claim construction, however, is not a policy-driven inquiry. As stated earlier, it is a contextual interpretation of language. The scope of patent claims can neither be broadened nor narrowed based on abstract policy considerations regarding the effect of a particular claim meaning. See Quantum Corp. v. Rodime, PLC, 65 F.3d 1577, *1340 1584 (Fed.Cir.1995) C‘[I]t is well settled that no matter how great the temptations of fairness or policy making, courts do not redraft claims.”). For this precise reason, this court has repeatedly stated that a court must construe claims without considering the implications of covering a particular product or process. See NeoMagic Corp. v. Trident Microsys. Inc., 287 F.3d 1062, 1074 (Fed.Cir.2002); SRI Int’l v. Matsushita Elec. Corp., 775 F.2d 1107, 1118 (Fed.Cir.1985).
The district court also justified its commercial-significance limitation to preserve the claim’s validity in the face of a challenge to its definiteness under § 112, second paragraph. In essence, the district court considered the claim indefinite if construed to cover undetectable trace amounts of PHC hemihydrate. In other words, the trial court feared that potential infringers would not be -able to determine (and avoid) infringement if they cannot detect the claimed compound. See Morton Int’l, Inc. v. Cardinal Chem. Co., 5 F.3d 1464, 1469-70 (Fed.Cir.1993). This reasoning misses the proper purpose of the definiteness requirement.
The second paragraph of § 112 requires the specification of a patent to “conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.” 35 U.S.C. § 112, ¶ 2 (2000). To satisfy this requirement, the claim, read in light of the specification, must apprise those skilled in the art of the scope of the claim. See Miles Labs., Inc. v. Shandon, Inc., 997 F.2d 870, 875 (Fed.Cir.1993). Moreover, claims need not “be plain on their face in order to avoid condemnation for indefiniteness; rather, what [this court has] asked is that the claims be amenable to construction, however difficult that task may be.” Exxon Research & Eng’g Co. v. United States, 265 F.3d 1371, 1375 (Fed.Cir.2001). In this case, the claim covers a definite chemical structure. To a chemist in this field, this claim is plain on its face. Thus, claim 1 of the ’723 patent cannot be invalid for indefiniteness under § 112.
In Morton, this court affirmed a district court’s judgment of indefiniteness because “one skilled in the art could not determine whether a given compound was within the scope of the claims.” 5 F.3d at 1470. Thus, the claims át issue were “not sufficiently precise to permit a potential competitor to determine whether or not he is infringing.” Id. The Morton case, therefore, does not hold that the inability to detect the claimed compound in the infringing device renders a compound claim indefinite. Rather, Morton stands for the unremarkable proposition that a compound claim, to be definite, must apprise a skilled artisan of the bounds of the claim. The record in Morton contained “considerable evidence showing that those skilled in the art could not make the claimed compounds using the procedures of the specification, and no evidence that such compounds even exist.” Id. at 1469-70.
This case bears little similarity to Morton. Here, claim 1 unambiguously identifies the bounds of the claim. It states: “Crystalline paroxetine hydrochloride hemihydrate.” Thus, this claim recites in clear terms a discernible chemical structure. It would be difficult to imagine a more clear and definite claim.
The test for indefiniteness does not depend on a potential infringer’s ability to ascertain the nature of its own ac *1341 cused product to determine infringement, but instead on whether the claim delineates to a skilled artisan the bounds of the invention. In this case, the problem for Apotex is that it cannot accurately ascertain the nature of its own product. The scope of this claim is clear; the infringement of the Apotex product is not. Even if a claim is broad enough to embrace undetectable trace amounts of the claimed invention, “[bjreadth is not indefiniteness.” In re Gardner, 57 C.C.P.A. 1207, 427 F.2d 786, 788 (CCPA 1970). Stated more precisely, this claim is neither broad nor narrow, but definitive of this particular chemical structure. For inventing and disclosing this structure, the inventor enjoys the exclusive right to practice that invention for the patent’s limited term. Accordingly, claim 1, as construed above, is not indefinite under 35 U.S.C. § 112, second paragraph.

Infringement and Equity

Having interpreted claim 1 to cover PHC hemihydrate without further limitation, this court turns to infringement. In anticipation of this very scenario, the district court performed a factual infringement analysis based on this correct claim construction. The district court held that the evidence showed that Apotex’s PHC anhydrate tablets would contain trace amounts of PHC hemihydrate. SmithKline Beecham Corp., 247 F.Supp.2d at 1043. As indicated above, the record supports this factual finding. This court, therefore, affirms the district court’s finding that Apotex’s product will infringe under this court’s claim construction.
Because Apotex seeks to practice the prior art, and because that practice infringes, the next logical inquiry involves anticipation. That is, if the prior art infringes now, logically the prior art should have anticipated the claim before the filing of the ’723 patent. See Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc., 246 F.3d 1368, 1378 (Fed.Cir.2001) (restating the axiom that “that which would literally infringe if later in time anticipates if earlier”). At trial, Apotex asserted that Ferro-san’s process of making PHC anhydrate inherently resulted in trace amounts of the hemihydrate prior to the ’723 patent and thus inherently anticipated that patent. The district court, however, determined that Apotex did not present clear and convincing evidence of inherent anticipation. According to the district court’s findings, “no one knows when the hemihydrate form of paroxetine came into existence, although it is a reasonable inference that it did not exist in a detectable amount until” Smith-Kline’s “serendipitous” discovery. SmithKline Beecham Corp., 247 F.Supp.2d at 1022, 1025. Apotex does not dispute that PHC hemihydrate was first detected by Curzons in 1985, or that it is unable to prove precisely when PHC hemihydrate came into existence.
SmithKline argues that practicing the T96 patent infringes claim 1 of the ’723 patent, but that the ’196 patent does not anticipate claim 1 of the ’723 patent. SmithKline uses the “disappearing poly-morph” theory to justify its apparently inconsistent positions. On the one hand, SmithKline asserts that the creation of a prior art compound will result in a product containing at least trace amounts of their patented compound. On the other hand, SmithKline contends that the creation of the prior art compound before Smith-Kline’s discovery of its compound did not have the same result. For this reason, the district court was understandably uncomfortable about allowing claim 1 to embrace its literal scope. The district court feared *1342 such a construction would result in “a considerable extension in the effective patent term of paroxetine because it might become difficult or even impossible to manufacture the pure anhydrous form after the Ferrosan patent expired.” Id. at 1019. While these concerns are certainly legitimate, claim construction, as noted before, proceeds independent of its policy implications. Fortunately, the district court had the foresight to consider alternative analy-ses in this unique situation.
The district court, in its alternative infringement analysis, properly found infringement, but created a new equitable defense to shield Apotex from liability for that infringement. Id. at 1043-45. In short, the defense would apply where the patentee significantly contributed to causing the infringement. After all, Smith-Kline’s creation of the hemihydrate form of PHC created a seeded environment that, under the facts found by this district court, makes the practice of the prior art an infringement, while arguably precluding the operation of anticipation by inherency. In this unique and unprecedented circumstance, the trial court understandably reached out to find an equitable remedy to protect Apotex. In any event, notwithstanding the potential merit of a new equitable doctrine in this unprecedented instance, this court can resolve this case without its application because claim 1 is invalid as inherently anticipated under 35 U.S.C. § 102(b). Accordingly, this court declines to address the trial court’s proposed equitable defense.
The concurring opinion seeks to remedy the perceived inequity in this case by applying 35 U.S.C. § 101, arguing the subject matter of claim 1 does not cover patentable subject matter. Unfortunately, the concurrence confuses patent eligibility under § 101 with patentability under other provisions in the Patent Act, such as 35 U.S.C. § 102. The concurrence admits that PHC hemihydrate is a synthetic, man-made compound eligible for patent protection. In fact, the claimed invention is without question a “composition of matter” or an article of “manufacture” within the terms of § 101. Accordingly, the claimed invention1 represents subject matter eligible for patent protection under § 101. With that conclusion, the inquiry under § 101 ends.
The concurring opinion, however, would expand the subject matter eligibility analysis under § 101 to encompass some review of the scope of the claims. To the contrary, “[e]ither the subject matter falls within Section 101 or it does not.” Animal Legal Def. Fund v. Quigg, 932 F.2d 920, 930 (Fed.Cir.1991). The scope of the claims is not relevant to subject matter eligibility. Subject matter does not take on a different eligibility status with adjustments in the scope of the proposed claim. Patent eligibility under § 101 is simply not an issue in this case.
Anticipation — § 102(b)
A patent claim is not valid if “the invention was patented or described in a printed publication in this ... country ... more than one year prior to the date of the application for patent in the United States....” 35 U.S.C. § 102(b) (2000). For prior art to anticipate a claim “it must be sufficient to enable one with ordinary skill in the art to practice the invention.” Minn. Mining & Mfg. Co. v. Chemque, Inc., 303 F.3d 1294, 1301 (Fed.Cir.2002) (citing In re Borst, 52 C.C.P.A. 1398, 345 F.2d 851, 855 (CCPA 1965)). “Whether a prior art reference is enabling is a question of law based upon underlying factual *1343 findings.” Id. (citing Crown Operations Int’l Ltd. v. Solutia, Inc., 289 F.3d 1367, 1376 (Fed.Cir.2002)). Anticipation is a question of fact. See id. However, without genuine factual disputes underlying the anticipation inquiry, the issue is ripe for judgment as a matter of law.
The T96 patent is undisputed prior art under 35 U.S.C. § 102(b), even though the ’196 patent discloses how to make PHC anhydrate and does not discuss PHC hem-ihydrate. PHC hemihydrate was not even discovered until years after the ’196 patent was filed. Nonetheless, the T96 patent anticipates claim 1 of the ’723.patent because the ’196 inherently discloses PHC hemihydrate.
This court recently set forth the standards for anticipation by inherency:
A patent is invalid for anticipation if a single prior art reference discloses each and every limitation of the claimed invention. Lewmiar Marine, Inc. v. Barient Inc., 827 F.2d 744, 747 (Fed.Cir.1987). Moreover, a prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference. Continental Can Co. v. Monsanto Co., 948 F.2d 1264, 1268 (Fed.Cir.1991).
Schering Corp. v. Geneva Pharms., Inc., 339 F.3d 1373, 1377 (Fed.Cir.2003). In Schering Corp., this court also decided that the doctrine of inherent anticipation applies to the entire claimed subject matter just as it does to a single claimed feature. Id. at 1379 (“Because inherency places subject matter in the public domain as well as an express disclosure, the inherent disclosure of the entire claimed subject matter anticipates as well as inherent disclosure of a single feature of the claimed subject matter.”). Moreover, this court reiterated in Schering Corp. that inherent anticipation does not require a person of ordinary skill in the art to recognize the inherent disclosure in the prior art at the time the prior art is created. Id. at 1377 (citing In re Cruciferous Sprout Litig., 301 F.3d 1343, 1351 (Fed.Cir.2002); MEHL/Biophile Int’l Corp. v. Milgraum, 192 F.3d 1362, 1366 (Fed.Cir.1999); Atlas Powder Co. v. Hanex Prods., Inc., 190 F.3d 1342, 1348-49 (Fed.Cir.1999)).
The district court addressed the issue of inherent anticipation in this case, but it found in favor of SmithKline because Apotex did not prove by clear and convincing evidence that it was impossible to make pure PHC anhydrate in the United States before the critical date of the ’723 patent. See SmithKline Beecham Corp., 247 F.Supp.2d at 1026 (“[I]t is equally possible, as far as anyone knows, that practicing patent [’]196 in non-seeded premises' — -and goodness knows there were some in the United States as of [the critical] date — would not have produced any hemihydrate.”). The district court erred in requiring Apotex to meet this standard of proof, which is too exacting. Apotex did not need to prove that it was impossible to make PHC anhydrate in the United States that contained no PHC hemihydrate, but merely that “the disclosure [of the prior art] is sufficient to show that the natural result flowing from the operation as taught [in the prior art] would, result in” the claimed product. In re Oelrich, 666 F.2d 578, 581 (CCPA 1981); accord MEHL/Biophile Int’l Corp., 192 F.3d at 1366; see also Atlas Powder, 190 F.3d at 1349-50 (affirming the district court’s finding of inherent anticipation despite a finding that the inherent element could be avoided by taking “extraordinary measures” when *1344 practicing the prior art). Contrary to this court’s precedents, the district court’s analysis of inherent anticipation did not consider the teachings of the ’196 patent separately from the actual production of PHC hemihydrate. See Schering Corp., 339 F.3d at 1380 (“Anticipation does not require the actual creation or reduction to practice of the prior art subject matter; anticipation requires only an enabling disclosure.”) (citing In re Donohue, 766 F.2d 531, 533 (Fed.Cir.1985)). Thus, whether it was actually possible to make pure PCH anhydrate before the critical date of the ’723 patent is irrelevant. The ’196 patent suffices as an anticipatory prior art reference if it discloses in an enabling manner the production of PHC hemihyd-rate. See id. The ’196 patent discloses a method of manufacturing PHC anhydrate that naturally results in the production of PHC hemihydrate. Consequently, applying the facts as found by the district court to the correct standard, this court holds that claim 1 of the ’723 patent is invalid for anticipation by the ’196 patent.
The record shows, and SmithKline admits through its proffered arguments, that producing PHC anhydrate according to the ’196 patent inevitably results in the production of at least trace amounts of anticipating PHC hemihydrate. The parties do not dispute that the first known existence of PHC hemihydrate resulted from an attempt to produce PHC anhyd-rate according to the T96 patent. In December 1984, SmithKline serendipitously made PHC hemihydrate at its Harlow plant while attempting to manufacture PHC anhydrate according to the ’196 patent. As discussed previously, Curzons’s discovery of PHC hemihydrate in Worth-ing also occurred while he was making PHC anhydrate according to the ’196 patent. Both of these undisputed events support a finding that practicing the ’196 patent naturally results in the production of PHC hemihydrate. The district court also found, and the parties do not dispute, that neither Apotex nor SmithKline can presently produce PHC anhydrate that does not contain at least trace amounts of PHC hemihydrate. See, e.g., SmithKline Beecham Corp., 247 F.Supp.2d at 1044 (“Apo-tex cannot eliminate all crystals of hemih-ydrate .... ” (emphasis in original)). In sum, the record shows that the manufacture of PHC anhydrate according to the ’196 patent necessarily results in the production of PHC hemihydrate. This fact finds further record support in the holding that Apotex would infringe claim 1 of the ’723 patent under the “single crystal” claim construction. Id. at 1043.
The district court made these findings, at least in part, because PHC anhydrate produced at the parties’ manufacturing facilities would convert to PHC hemihydrate because the facilities had been “seeded” with PHC hemihydrate crystals. Id. SmithKline takes the position that Apo-tex’s infringement will result wholly from the PHC hemihydrate “seeds” present in Apotex’s facility, and that Apotex could avoid infringement if it manufactured PHC anhydrate in a facility clean of hemihyd-rate “seeds.” While PHC hemihydrate “seeds” will certainly exacerbate the presence of PHC hemihydrate in Apotex’s PHC anhydrate pills, this court does not accept SmithKline’s assertion that the hemihydrate “seeds” will be the sole cause of the undesired PHC hemihydrate in Apo-tex’s anhydrate pills. Indeed, SmithKline argued at trial that PHC hemihydrate “seeds” are not necessary to produce PHC hemihydrate.
SmithKline’s position on the source of Apotex’s alleged infringement is inconsis *1345 tent with the undisputed creation of PHC hemihydrate as discussed supra. The production of PHC anhydrate at both Smith-Kline’s Harlow and Worthing plants resulted in the serendipitous production of PHC hemihydrate. The only plausible explanation for this appearance of PHC hem-ihydrate at the Harlow plant and the likely explanation for its appearance at the Worthing plant is that PHC hemihydrate arises as a natural derivative of practicing the ’196 patent. SmithKline did not offer any evidence that pure PHC anhydrate can be produced in facilities that are not seeded. Id. at 1035 (district court noting the absence of any experiments by Smith-Kline to show the difference between PCH anhydrate manufactured in a facility both before and after it is “seeded”). Smith-Kline’s only counter to 'this explanation is that it had been manufacturing PHC an-hydrate according to the T96 patent for years before the hemihydrate was first detected in 1995. SmithKline would have the court infer from this argument that it is possible to make pure PHC anhydrate according to the T96 patent in unseeded conditions. The district court, however, properly dismissed this logic noting that “existence and detection are not the same thing.” Id. at 1022. The district court went on to explain that PHC hemihydrate may have existed in undetectable amounts since Ferrosan first produced PHC anhyd-rate in the 1970s, particularly because the technology to detect PCH hemihydrate in small amounts did not exist until 1985. The district court reasoned that it may also be possible for PHC anhydrate to coexist with low levels of PHC hemihyd-rate without further conversion, thereby rejecting SmithKline’s argument that the absence of conversion in early batches of PHC anhydrate prove that the hemihyd-rate form did not exist prior to 1984. See id. at 1022-23 (reconciling conflicting expert testimony by discussing a possible equilibrium point at which conversion plateaus at a few percentage points), 1031 (“[HJemihydrate in small amounts does nothing for the anhydrate with which it is mixed.”) & 1035. (noting that inconsistent test results “impl[y] that the hemihydrate and the anhydrate can coexist in an equilibrium”).
Because the record contains clear and convincing evidence that production of PHC anhydrate in accordance with the ’196 patent inherently results in at least trace amounts of PHC hemihydrate, this court holds that the T96 patent inherently anticipates claim 1 of the ’723 patent under 35 U.S.C. § 102(b). Consequently, it was legal error for the district court to base its finding of no inherent anticipation upon a finding that Apotex did not present clear and convincing evidence that PHC hemihydrate existed before the critical date of the ’723 patent. Additionally, the district court’s supposition that Apotex could possibly prevent PHC anhydrate from converting to PHC hemihydrate by building a new plant that was not seeded with PHC hemihydrate, or by preventing the PHC anhydrate from being exposed to moisture, does not change this result. This court’s law does not require Apotex to take extraordinary measures to practice the prior art without infringing claim 1 of the ’723 patent. See Atlas Powder, 190 F.3d at 1349-50 (affirming the district court’s finding of inherent anticipation despite a finding that the inherent element could be avoided by taking “extraordinary measures” when practicing the prior art).
SmithKline has sued Apotex for infringement of the ’723 patent in an express attempt to prevent Apotex from practicing the T96 patent upon its expiration. In *1346 Atlas Powder, this court noted that one of the principles underlying the doctrine of inherent anticipation is to ensure that “[t]he public remains free to make, use or sell prior art compositions or processes, regardless of whether or not they understand their complete makeup or the underlying scientific principles which allow them to operate.” 190 F.3d at 1348; accord Schering Corp., 339 F.3d at 1379-80. Invalidating claim 1 of the ’723 patent for inherent anticipation by the ’196 patent furthers this policy of allowing the public to practice expired patents.
This holding is also in accord with this court’s precedent. In re Seaborg, 51 C.C.P.A. 1109, 328 F.2d 996 (CCPA 1964), held that claims for an isotope of americium made by a nuclear reaction were not inherently anticipated by a prior art patent disclosing a similar nuclear reaction process but with no disclosure of the claimed isotope. In finding no anticipation, this court’s predecessor found “no positive evidence” that the claimed isotope was inherently produced by the prior art process. Id. at 999. The court properly held that the mere “possibility” that the small amount of the claimed element “may have been produced” was insufficient to invalidate the claim for anticipation. Id. Similarly, it is undisputed that SmithKline’s and Apotex’s practice of the ’196 patent results in the production of the claimed PHC hemihydrate in trace amounts.
As noted in Schering Corp., a patentee may obtain patent protection for an inherently anticipated compound through proper claiming. 339 F.3d at 1381. This court’s holding today merely precludes patent protection for the bare compound PHC hemihydrate as claimed in claim 1 of the ’723 patent because the compound is inherently anticipated by the ’196 patent.

Miscellaneous Issues

SmithKline also appealed the district court’s decision to prevent SmithKline from pursuing its contributory infringement claim. As discussed above, that claim asserted that the ingestion of Apo-tex’s PHC anhydrate tablet by a patient would result in conversion to PHC hemih-ydrate. Again, SmithKline’s allegations of contributory infringement based upon the theory that PHC anhydrate converts into PHC hemihydrate upon ingestion further supports this court’s finding of inherent anticipation. Nevertheless, because claim 1 is invalid for anticipation under § 102(b), SmithKline’s appeal on contributory infringement is moot.
Similarly, SmithKline’s appeal of the district court’s ruling that injunctive relief under 35 U.S.C. § 271(e)(4) is within the district court’s discretion is also moot. That ruling was not necessary for the district court’s judgment below and is immaterial to the determination of this appeal. This court, therefore, does not address that issue in this opinion.
III.
In summary, this court reverses the claim construction of the district court and holds that claim 1 of the ’723 patent covers any amount of crystalline paroxetine hydrochloride hemihydrate without further limitation. Based on the factual findings of the district court, this court affirms the district court’s finding that Apotex’s PHC anhydrate product will infringe claim 1 under that broad construction. Notwithstanding that conclusion, this court holds, based on the undisputed facts, that claim 1 of the ’723 patent is invalid for inherent anticipation by the ’196 patent under § 102(a). Apotex is, therefore, not liable *1347 for infringing claim 1 of the ’723 patent. This court affirms the district court’s judgment.
COSTS
Each party shall bear its own costs.
AFFIRMED