LOURIE, Circuit Judge,
dissenting.
I respectfully dissent from the majority’s decision to affirm the rejection by the United States Patent and Trademark Office (“PTO”) of pending claims 42, 43, and 45 for anticipation by inherency.
Inherency is a very tricky concept in patent law. Its salutary goal is to prevent subject matter that is effectively in the public’s possession from being retrieved by a patent and withdrawn from the public domain. On the other hand, its downside is withholding patent protection from that which the public knew nothing about until a later inventor found it. A case cited by the majority, Schering Corp. v. Geneva Pharm,., Inc., 339 F.3d 1373 (Fed.Cir.2003), illustrates the problem. A claimed compound not known to the art was held to be anticipated by inherency when it was found to be a metabolite of a prior art compound. Of course, many compounds administered to humans and animals do metabolize in some manner rather than being fully excreted as such. In Sobering, however, the prior art (1) did not disclose the later-claimed metabolite; (2) did not disclose any of the prior art compound’s metabolites; and (3) did not even disclose that the prior art compound could metabolize upon administration. Id. at 1376. On those facts, the court nonetheless concluded that the later-claimed compound was necessarily “in the public’s possession,” and thus was anticipated by inherency. Id. at 1380 (internal quotation marks omitted); see also Schering Corp. v. Geneva Pharm., Inc., 348 F.3d 992, 995-96 (Fed. Cir.2003) (Lourie, J., dissenting from denial of petition for rehearing en banc).
An unbounded concept of inherency, as Scheñng illustrates, threatens to stymie *1384 innovation by withdrawing from the realm of patentability that which has not before been known, used, or benefited from. Properly understood, anticipation by inherency is far more limited. See Tilghman v. Proctor, 102 U.S. 707, 711, 26 L.Ed. 279 (1880) (declining to find anticipation by inherency where a skilled artisan “certainly never derived the least hint” of the claimed process from the prior art). Nevertheless, recent cases have followed Schering’s expansive holding. See, e.g., SmithKline Beecham Corp. v. Apotex Corp., 403 F.3d 1331, 1343-44 (Fed.Cir.2005). Whether the majority’s holding in the present case will have a serious adverse effect on innovation is unclear, but I believe that the majority has found inherency where it does not exist.
The keystone of the inherency doctrine is inevitability. For anticipation by inherency, a later-claimed invention must have necessarily resulted from the practice of a prior art reference. Our precedent has been steadfast in this strict requirement of inevitability. See, e.g., Bettcher Indus., Inc. v. Bunzl USA, Inc., 661 F.3d 629, 639 (Fed.Cir.2011) (“Inherency ... may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient.” (internal quotation marks omitted)); Hansgirg v. Kemmer, 26 CCPA 937, 102 F.2d 212, 214 (1939) (same). Absent inevitability, inherency does not follow even from a very high likelihood that a prior art method will result in the claimed invention. See, e.g., Glaxo Inc. v. Novopharm Ltd., 52 F.3d 1043, 1047 (Fed.Cir.1995) (holding that even though the defendant’s experts reproduced a prior art method “thirteen times and each time they made [the claimed] crystals,” the patentee’s chemists twice produced different crystals from the same method, thus precluding inherency).
Were inevitability not required for inherency, a mere proposal for further experimentation could anticipate a claimed invention. That is not the law, however. There is nothing inevitable about a proposal. On this point, our precedent is straightforward: “An invitation to investigate is not an inherent disclosure.” Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1367 (Fed.Cir.2004). This maxim applies a fortiori in arts necessitating laboratory research, clinical studies, and other trial-and-error experimentation. In the unpredictable arts, rarely if ever will an untested proposal necessitating further study and optimization meet the stringent inevitability requirement of inherent anticipation. Although a patent should not be awarded if a claimed invention is previously described in a printed publication or patent, or obvious thereover, innovation should not be impeded by mere speculation.
On the facts of this case, none of the four cited references describes the claimed invention or the practice of a method that inherently, necessarily, carries out the claimed processes. The claims at issue recite a method for the treatment or prevention of stroke or its recurrence comprising administering ramipril to a patient diagnosed as in need of such treatment or prevention. As the majority acknowledges, the references do not expressly disclose this claimed method. Nor is the claimed method an inherent result of carrying out what the references describe.
The HOPE paper, the only reference relied on by the majority, describes a plan designed to administer a combination of ramipril and vitamin E to patients at risk of a major vascular event including myocardial infarction, stroke, or death from cardiovascular disease. But HOPE (an acronym for Heart Outcomes Prevention Evaluation) truly expresses only a hope,
*1385 not achievement of that hope. The HOPE paper itself states that it discloses only the “design of a ... trial.” J.A. 58. The results of a proposed study — involving the administration of two therapeutic agents over four years to more than 9,000 patients with varied medical histories in 267 hospitals across nineteen countries — are neither predictable nor inevitable. J.A. 58, 60, 63. Indeed, the HOPE study provides specific criteria for “early termination” if the proposed treatment is ineffective. J.A. 65. Inherency follows from the carrying out of an activity that inherently produces what is claimed; inherency does not arise from a plan whose description does not indicate its realization.
The majority states that HOPE discloses a “protocol” for the administration of ramipril. Majority Op. at 1381. The fact that HOPE is a planned study, therefore, is not in dispute. The majority’s conclusion, however, rests on its finding that such administration, if carried out, would inherently treat or prevent stroke. That finding is unsupported by the record. As the majority correctly notes, the results of the planned HOPE study, published in the New England Journal of Medicine years after Montgomery’s priority date and not of record in this case, are “irrelevant to an anticipation analysis.” Majority Op. at 1378. Nevertheless, to the extent that the majority’s reasoning was infected by its consideration of this non-record evidence, it is worth noting two things. First, the authors of the New England Journal of Medicine paper acknowledge having subsequently altered the prior art HOPE study design “to account for the impact of a possible lag before treatment had its full effect,” thus demonstrating that the prior art HOPE study was, at best, a plan subject to modification. See The Heart Outcomes Prevention Evaluation Study Investigators, Effects of an Angiotensin-Converting-Enzyme Inhibitor, Ramipril, on Cardiovascular Events in High-Risk Patients, 342 New Eng. J. Med. 145, 146 (2000). Second, that the results of the HOPE study merited publication in the New England Journal of Medicine, a prestigious and selective peer-reviewed medical journal of the highest caliber, strongly imply that the study’s results were anything but preordained.
The majority further states that even if HOPE merely proposed administering ramipril for treatment or prevention of stroke (without actually doing so), it would still anticipate. Majority Op. at 1381-82. The majority’s view is flawed. A description of a process, even if not carried out, is an anticipation of that process. But a mere description of a process that, if it had been carried out, might yield a particular undisclosed result is not an inherent anticipation of that result. Stated somewhat differently, inherency requires description of action that inevitably produces a result, not merely description of action that might have been carried out, but was not, and might have yielded a particular result, but did not. The HOPE reference is only a description of what has not been carried out; whether or not, if carried out, it would inherently accomplish the claimed result is not before us, for HOPE is only a plan.
As the majority notes, HOPE does expressly disclose an actual administration of a low dose of ramipril for a short time period as part of an initial “randomization” step. But there is no evidence in the record to prove that HOPE discloses administration sufficient to inevitably treat or prevent stroke, and the PTO does not argue otherwise. HOPE, therefore, clearly fails to describe any administration of ramipril at a dose and for a period of time that would inherently lower the risk of stroke.
*1386 Because the majority rests its decision only on HOPE, I will not discuss the shortcomings of the other references cited by the PTO, but, as indicated above, in my view they also fail to anticipate the claimed invention, either expressly or by inherency-
Finally, the majority appears to criticize the disclosure of Montgomery’s application. It must be noted that the only ground of rejection by the Board, and thus the only ground of rejection properly before us on appeal, is anticipation by inherency. Whether Montgomery’s pending claims are patentable on other grounds, such as enablement or obviousness, must be dealt with by the PTO in the first instance.
For the foregoing reasons, I respectfully dissent.