SCHALL, Circuit Judge,
concurring.
I join the court’s reversal of the judgment on appeal and its remand of the case for further proceedings. I write separately, however, because, while I agree with the court that the district court erred in holding claims 1 and 11 of the '753 patent invalid by reason of indefiniteness, I would rest that ruling on a more limited analysis. I therefore respectfully concur.
In Part II of the Discussion section of its opinion, the court correctly sets forth our law on indefiniteness. In short, a claim is indefinite (1) when it is not amenable to construction or (2) when, even if it can be construed, “the construction remains insolubly ambiguous, meaning it fails to provide sufficient clarity [delineating the metes] and bounds of the claim to one of skill in the art,” Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 655 F.3d 1364, 1373 (Fed.Cir.2011). See Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342, 1347 (Fed.Cir.2005) (“Only claims ‘not amenable to construction’ or ‘insolubly ambiguous’ are indefinite.”); see also Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1371 (Fed.Cir.2008) (“In and of itself, a reduction of the meaning of a claim term into words is not dispositive of whether the term is definite .... And if reasonable efforts at claim construction result in a definition that does not provide sufficient particularity and clarity to inform skilled artisans of the bounds of the claim, the claim is insolubly ambiguous and invalid for indefiniteness.”) (internal citations omitted). As the court concludes, neither of these two grounds for indefiniteness exists in this case.
First, the “spaced relationship” limitation plainly was amenable to construction. The district court construed the two recitations of “in spaced relationship with each other” in claim 1 to mean that “there is a defined relationship between the live electrode and the common electrode on one side of the cylindrical bar and the same or a different defined relationship between the live electrode and the common electrode on the other side of the cylindrical bar.” See Biosig Instruments, Inc. v. Nautilus, Inc., No. 10-cv-7722, slip op. at 3 (S.D.N.Y. Sept. 29, 2011) (Dkt. 32, “Summary Order Memorializing Court’s Patent Claim Term Constructions After a Mark-man Hearing”). Neither Biosig nor Nautilus disputes that the district court did, in fact, construe the “spaced relationship” limitation.
Second, the court’s construction provided sufficient clarity to one of skill in the art as to the metes and bounds of the “spaced relationship” limitation. Put most simply, the district court construed that limitation to require “defined relationships,” between the live electrode and the common electrode on each side of the cylindrical bar.[1] What that construction means is that, on each side of the cylindrical bar, there is a fixed spatial relationship between the live electrode and the common electrode. And the court correctly states that the intrinsic-evidence relating to the '753 patent “discloses certain inherent parameters of the claimed apparatus, which to a skilled artisan may be sufficient to understand the metes and bounds of ‘spaced relationship’.” See Majority Op. at 899. In my view, along with the court’s *906 subsequent rejection of Nautilus’s reliance on Halliburton Energy Services, Inc. v. M-I LLC, 514 F.3d 1244 (Fed.Cir.2008); and IPXL Holdings, L.L.C. v. Amazon.com, Inc., 430 F.3d 1377 (Fed.Cir. 2005), that is all that is needed to put this case to rest.
My concern with the balance of the court’s analysis is that it presumes a functional linkage between the “spaced relationship” limitation and the removal of EMG signals. In other words, the analysis proceeds as if the “spaced relationship” limitation itself — rather than other limitations of claim 1 — included a functional requirement to remove EMG signals. See Majority Op. at 901 (“[A] skilled artisan could apply a test and determine the ‘spaced relationship’ as pertaining to the function of substantially removing EMG signals.”); id. at 899 (“The functionality of the claimed heart rate monitor as recited in claim 1, described in the specification, and which provided the basis for overcoming the PTO’s office action rejections during reexamination, sheds further light on the meaning of ‘spaced relationship.’ ”). Indeed, the parties to this- appeal and the district court seem to presume the same. The language of the “spaced- relationship” limitation, however, does not contain a functional requirement:
a first live electrode and a first common electrode mounted on said first half in ' spaced relationship with each other;
a second live electrode and a second common electrode mounted' on said second half in spaced relationship with each other
'753 patent col. 5 ll. 28-33. In addition, as seen above, the district court’s construction of the “spaced relationship” limitation does not include any functional language related to the removal of EMG signals, and Nautilus has not conditionally cross-appealed that construction.
In my view, we should not address a functional limitation included neither in the “spaced relationship” limitation itself nor in the district court’s construction of that limitation. By allowing the functional limitation of EMG removal from elsewhere in claim 1 to color our analysis of the definiteness of the “spaced relationship” limitation, it seems to me we address an issue that is not currently before us.

. Although this construction may be seen as broad, as the court notes, "[b]readth is not indefiniteness.” See Majority Op. at 902 (citing SmithKline Beecham Corp. v. Apotex Corp., 403 F.3d 1331, 1340-41 (Fed.Cir.2005)).