NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

06-1140,-1178,-1183

ENGATE, INC.,

Plaintiff-Appellant,

v.

ESQUIRE DEPOSITION SERVICES LLC,

Defendant-Cross Appellant,

and

ATKINSON-BAKER, INC.,

Defendant-Cross Appellant.

_____

DECIDED:  December 26, 2006

_____

Before RADER, Circuit Judge, PLAGER, Senior Circuit Judge, and DYK, Circuit Judge.

RADER, Circuit Judge.

Plaintiff-Appellant, Engate, Inc. (Engate), sued several court reporting services, including the only two remaining defendants, Esquire Deposition Services, LLC (Esquire) and Atkinson-Baker, Inc. (Atkinson), for patent infringement.  The United States District Court for the Northern District of Illinois entered summary judgment of no direct or indirect infringement.  Engate, Inc. v. Esquire Deposition Serv., L.L.C., No. 01 C 6204, U.S. Dist. LEXIS 15802, at *1 (N.D. Ill. Sept. 10, 2003) (Direct Literal Infringement Summary Judgment);  Engate, Inc. v. Esquire Deposition Serv., L.L.C., 01

C 6204, 2004 WL 609800 (N.D. Ill. Mar. 26, 2004) (<u>Indirect Infringement Summary Judgment</u>). Engate appeals those rulings and another summary judgment of invalidity for several claims of its patents. <u>Engate, Inc. v. Esquire Deposition Serv., L.L.C.</u>, 331 F.Supp.2d 673 (N.D. Ill. 2004). Following a bench trial in May 2005, the trial court entered further invalidity findings. <u>Engate, Inc. v. Esquire Deposition Serv., L.L.C.</u>, 01 C 6204 (N.D. Ill. Dec. 5, 2005) (<u>Judgment</u>). Esquire and Atkinson cross-appeal the trial court's ruling that claim 6 of Engate's United States Patent No. 5,970,141 ('141 patent) was not invalid. <u>Id.</u> This court <u>affirms</u> the trial court's summary judgment and bench trial rulings, but <u>reverses</u> the validity ruling on claim 6 of the '141 patent.

I.

Engate holds rights to the following U.S. Patent Nos.:

| | | | | | |
|---|---|---|---|---|---|
| (1) | 5,369,704 ('704 patent) | | (7) | 5,926,787 ('787 patent) |
| (2) | 5,740,245 ('245 patent) | | (8) | 6,026,395 ('395 patent) |
| (3) | 5,884,256 ('256 patent) | | (9) | 5,878,186 ('186 patent) |
| (4) | '141 patent | | (10) | 5,949,952 ('952 patent) |
| (5) | 5,940,800 ('800 patent) | | (11) | 6,023,675 ('675 patent) |
| (6) | 5,815,639 ('639 patent) | | (12) | 6,282,510 ('510 patent) |

These inventions generally provide methods and apparatuses to use and manipulate in-court testimony generated in real time by an automatic transcription system. The father of all the other patents, the '704 patent, carries the title "Down-line transcription system for manipulating real time testimony." The '704 patent issued on November 29, 1994. **[Id]** That patent claims: "A transcription network having linked computer terminals for a court reporter and for examining, defending and associate attorneys." '704 patent, Abstract. More particularly, the patented invention "relates to a method and apparatus incorporating an automatic transcription system for providing real time use and

manipulation of transcribed testimony by attorneys, judges, court reporters, witnesses and clients." '704 patent, col. 1, ll. 6-11.

## II.

Summary judgment is appropriate only if, after verifying the absence of genuine factual issues and viewing all facts in a light most favorable to the nonmoving party, the court determines that the law entitled the moving party to judgment. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

On summary judgment, the trial court determined that Engate did not show that what the defendants offered for sale infringed any limitations disclosed in Engate's patents. Direct Literal Infringement Summary Judgment, U.S. Dist. LEXIS 15802, at *31-34. Engate counters that its evidence shows an "offer to sell" the patented invention. See, e.g., 3D Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1379 (Fed. Cir. 1998). In support of this proposition, Engate asserts that its "claim charts" show an offer to sell the patented inventions.

To the contrary, as the trial court concluded, the record does not even conclusively show that the item "offered" for sale was the patented invention. Direct Literal Infringement Summary Judgment, U.S. Dist. LEXIS 15802, at *26. Engate did not show that the defendants' products and services, which they offered on their websites, infringed the asserted patents. Id., slip op. at 35. Even though Atkinson's website mentioned "LiveNote(tm) CaseViewII® by Stenograph Summation Legal Technologies e-transcript binder by realLegal.com," no evidence supports a finding of an "offer to sell." After all, the website contained no information about specific real time products, the methods and systems disclosed in Engate's patents, or pricing. Id., slip op. at 30-31. The trial court correctly concluded that "a reasonable jury would be hard

pressed to find that Atkinson-Baker sells anything, let alone a 'patented invention' in violation of § 271(a)." Id., slip op. at 31.

Further, as the trial court also recognized, Engate did not show that the document Esquire disseminated actually offered to sell an infringing product. Id., slip op. at 33-35. Though the document disclosed Esquire's products and services as including "Interactive Realtime," "Internet Realtime" and "Synchronization of Video to Transcript," the trial court properly pointed out that Engate would need to demonstrate infringement through "more analysis comparing the services generally described in the document with the methods and systems described in those claims." Id., slip op. at 35. Although the Esquire document contained "some pricing information," the "descriptions of the services" were only general overviews with little relation to any of the patented categories or services. Id., slip op. at 34. As a result, the trial court correctly concluded that "the offer to sell these services, in and of itself, does not amount to direct infringement in violation of § 271(a)." Id., slip op. at 35. The record is simply devoid of evidence that the products offered on the website infringe particular claims of the Engate patents, or that the services offered by Esquire, alone, once practiced or used, would infringe any particular asserted claims.

Furthermore, on summary judgment, the trial court also determined that Esquire and Atkinson did not induce court reporters and lawyers to directly infringe Engate's patents. Indirect Infringement Summary Judgment, slip op. at 20. Engate complains that the trial court erred by overlooking direct and circumstantial evidence of direct infringement, focusing instead on intent to cause infringement. To the contrary, the record on appeal shows little, if any evidence, direct or circumstantial, to show either Atkinson or Esquire had any intent to induce acts of infringement.

06-1140,-1178,-1183                                    4

Engate argues that defendants "widely promoted their respective real time reporting services using, e.g., LiveNote software to their customers," and "ensured that their customers were capable of using that software." These points do not show intent to induce infringement. Likewise, a press release from Esquire, which Engate calls "particularly incriminating from an intent standpoint," contains no evidence of intent. The trial court correctly concluded that this press release was a "general update[] on the status of the lawsuit." Id. at 14. Even viewing this evidence in the light most favorable to Engate, the record shows no intent to induce infringement. Beyond these points, real time reporting software might have substantial non-infringing uses, further rebutting an inference of intent.

III.

The trial court invalidated as anticipated under 35 U.S.C. § 102(b) claims 4, 8, and 10 of the '256 patent, claim 15 of the '800 patent, claims 26-28 of the '952 patent, and claims 1 and 3 of the '675 patent. Engate, 331 F.Supp.2d at 705. The trial court invalidated claims 4 and 8 of the '256 patent because they were anticipated by the computer-integrated courtrooms (CICs), as testified to by federal district judge Roger Strand in Phoenix, and as described in Diane Knox's "Phoenix's Courtroom of the Future," published in the American Lawyer in May of 1991 (the Knox reference). 331 F. Supp. 2d at 680, 691. Claims 4 and 8 of the '256 patent recite a computer interface that enables the user to annotate portions of the text with supplemental information related to the selected portion of the text in real time. 331 F. Supp. 2d at 691. The trial court correctly found that the

> software available in Judge Strand's CIC "permit[ted] the judge and the lawyers to insert notes of their own in the testimony as it unfolds and to program the computer to high-light any key words which they expect to

figure in the trial."   Strand, <u>supra</u>, at 11.   These notes could be interspersed through the testimony or indexed to the relevant portions of the text.   Knox, <u>supra</u>, at 9.

<u>Id.</u>

Engate argues that these references do not anticipate because they do not mention a "user interface," selecting portions of real time testimony and associating information with the selected portions.  To the contrary, the trial court relied on the use of the DiscoveryZX software, developed by Mr. Brent Sandstrom, in the CIC's, which required a "user interface," namely a computer terminal.  331 F. Supp. 2d at 680 & 689. Furthermore, the parties agreed to undisputed facts, including Mr. Sandstrom's testimony that DiscoveryZX had a "user interface" and a notes or annotation feature. Also, Judge Strand testified that "the software also permits the judge and the lawyers to insert notes of their own in the testimony as it unfolds."  Thus, "inserting notes into testimony" meets the limitation of "a note that annotates a selected portion of the delivered text" (claim 4) and also meets the limitation "a message relating to a selected portion of the delivered text" (claim 8), because by choosing where to put the note in the unfolding testimony, the user is selecting that testimony.  Furthermore, the Knox reference describes a "computer terminal at . . . counsel table."  And the Knox reference explains that the real time transcript is displayed "just three seconds after the words are taken down by the court reporter."  Notes "are stored in the individual's . . . password-secure file and can later be printed . . . interspersed with the text or indexed to the text." Ms. Merilyn A. Sanchez, a court reporter, corroborated this testimony.

Engate argues that the trial court erred in invalidating claim 10 of the '256 patent because it had to engage in an "inference" that the teachings of the DiscoveryZX Quick Reference Card (Card) applied to real time.  Although noting that "thus one can <u>infer</u>

that the F1 and F2 functions could be utilized on a realtime transcript," 331 F. Supp. 2d at 692 (emphasis added), the trial court showed that the F1 and F2 functions, as described on the Card of the DiscoveryZX software, "enable the user to 'Go to Next Keyword' and 'Go to Next Master Keyword,'" and that this card was for "<u>Realtime</u> Spectacular," <u>Id.</u> (emphasis added). Thus, the trial court did not engage in an inference at all, but relied on the Card for "<u>Realtime</u> Spectacular."

Additionally, the trial court invalidated claim 15 of the '800 patent. 331 F. Supp. 2d at 693. Claim 15 of the '800 patent describes a system that enables the user to create and choose a list of issues for identification in the transcript. Engate contends that the prior art coded issues merely by assigning numbers to subjects and simply typing the numbers into the transcript. The claim requires: (1) displaying on the screen <u>a list of issue categories</u>; (2) accepting, via the user input device, an input selecting at least <u>one issue category</u> from <u>the list of issue categories</u>; and associating at least a portion of the transcript text with the selected at least <u>one issue category</u>." '800 patent, col. 27, ll. 5-11 (emphasis added). Because neither the claim language nor specification requires display of issue categories by more than numbers, the trial court did not err in invalidating claim 15 of the '800 patent.

The trial court invalidated claims 26-28 of the '952 patent because it found "the distinction between a television screen and a computer screen immaterial to the substance of the patent," and because Engate "failed to raise a genuine issue of fact as to the validity of claims 26 through 28." 331 F. Supp. 2d at 697. Engate argues that closed captioning systems do not invalidate claims 26-28 because a television is not a computer, and because the lower court did not explicitly address that the video (or audio, depending on the claim) must be <u>associated with the text in real time</u>. The '952

patent, however, refers to "attorney terminal" in claims 5 and 11, but then claims a "terminal having a screen" in claims 17, 26, and 38, also using "terminal" by itself in claims 26, 27, 30, 34, and 35, and "remote terminal" in claims 38 and 39. The '952 abstract also distinguishes between "computer terminals," "the court reporter terminal," and "other terminals." The patent simply does not limit "terminal" to computers. The record supports the trial court's understanding that the term "terminal" may encompass televisions.

Furthermore, the record does not show a material issue of fact about association of video (or audio) with the text in real time. As the trial court noted, "[b]y the early 1990s, the National Captioning Institute (NCI) used a CAT [computer-assisted transcription] system to translate stenographic strokes to readable text that was associated with a broadcast signal and transmitted so that the text could be viewed on a screen receiving the signal along with the video image of the speaker." Id. at 696. Therefore, the trial court correctly found claims 26-28 of the '952 patent anticipated by the NCI's use in the 1990s of a CAT system for associating text and video or audio in real time.

In addition, the trial court found that closed-captioning television as described by Jerry Wolffe, in a United Press International article published on November 11, 1991 (the Wolffe reference), anticipated claims 1 and 3 of the '675 patent. Id. at 704. Engate argues on appeal that closed captioning systems do not invalidate claims 1 and 3 because the remote terminal must be able to send to the "relaying and storage system." According to Engate, the trial court did not explain any way for a television to engage in the required two-way communication with a storage system. However, the claim language at issue says nothing about a "relaying and storage system." Claim 1, upon

which claim 3 depends, recites a "remote system" and a "terminal" and states that they are "communicatively coupled." '675 patent, col. 16, ll. 2-5. Engate can only point to Fig. 7 of the '675 patent for a "relaying and storage system." This figure does not mean the claim recites a two-way communication system. A preferred embodiment cannot limit unambiguous claim language. Thus, the trial court correctly found that the closed captioning systems anticipate the asserted claims.

III.

Following the May 2005 bench trial, the trial court invalidated several claims as either anticipated under 35 U.S.C. § 102, obvious under 35 U.S.C. § 103, or indefinite under 35 U.S.C. § 112. Judgment, slip op. at 1; Engate, Inc. v. Esquire Deposition Serv., L.L.C., 01 C 6204 (N.D. Ill. Dec. 5, 2005) (Findings of Fact and Conclusions of Law). This court reviews a trial court's decision following a bench trial for errors of law and clearly erroneous findings of fact. SmithKline Beecham Corp. v. Apotex Corp., 403 F.3d 1331, 1337 (Fed. Cir. 2005).

The trial court found that Judge Frank Andrews' September 1992 article in TRIAL (the Andrews reference) anticipated claim 32 of the '952 patent. Findings of Fact and Conclusions of Law, slip op. at 14-15. The trial court noted that:

> claim 32 requires that "the video images . . . be synchronized to the transcript in real time," it does not state "that the user must be able to search for text and the associated video image in real time." Engate, 331 F. Supp. 2d at 697-98 (emphasis added). Further, claim 32 says nothing about a real time video feed to an attorney - rather by its terms it simply requires "displaying the text on the screen for real time review." The Andrews reference refers to the ability to obtain later playback of the associated video image, using as an example a play back of testimony requested by the jury during deliberations, and that is sufficient to describe what the claim requires.

<u>Findings of Fact and Conclusions of Law</u>, slip op. at 16 (emphases added). Engate contends on appeal, as it did before the trial court "that the subject claims <u>require</u> . . . a real time feed of audio and video signals to a terminal." Because, as noted by the trial court, "claim 32 says nothing about real time video feed to an attorney," <u>Findings of Fact and Conclusions of Law</u>, slip op. at 16, this court affirms. In addition, the trial found that the use of CAT systems in district courts anticipated claim 7 of the '395 patent. The claim language recites input of a search request, identification of a portion of the identified (from the search) transcript "during the generation of the transcript." '395 patent, col. 26, ll. 40-41. The claim language does not require full display of the generated real time transcript during conduct of the search. The claim only requires display of "a portion of the transcript identified." <u>Id.</u>, col. 26, l. 41. The trial court found

> that the computing system . . . generated a transcript in real time as the Court defined the term, stored that transcript, accepted a user search request, identified at least a portion of the transcript that corresponded to the request, and displayed that portion.

<u>Findings of Fact and Conclusions of Law</u>, slip op. at 10-11. As a result, the trial court correctly found that the prior art contained all elements of claim 7.

The trial court also found that XScribe real time transcription software in CICs, and the OmniCat CAT system anticipated claim 1 of the '639 patent and claim 4 of the '787 patent. <u>Findings of Fact and Conclusions of Law</u>, slip op. at 13. The trial court stated:

> The testimony of Marilyn Sanchez regarding XScribe, and that of Fred Middlebrooks & John Wenclawski regarding OmniCat, all which the Court found credible, establishes that these products, which were in public use prior to the critical date, performed the functions set forth in these claims. Sanchez's testimony was corroborated by that of Judge Strand and at least one article offered by defendant, see Def. Exh. 35, and that of Middlebrooks and Wenclawski was likewise corroborated by at least one exhibit received in evidence, see Def. Exh. 38.

Id. Engate argues that the claim requires a hierarchy to the various dictionaries (job, personal, phonetic) in the system. To the contrary, the claims say nothing of a "hierarchy." Moreover, the record shows that the prior art OmniCat, Xscribe, and Flexcap products provided this feature with a hierarchy of dictionaries. The trial court did not err in invalidating claim 1 of the '639 patent and claim 4 of the '787 patent.

Additionally, the trial court invalidated claims 12, 13, 19 and 25 of the '510 patent as anticipated by closed-captioning systems. Findings of Fact and Conclusions of Law, slip op. at 16-20. Engate maintained that these claims covered the synchronization of the transcribed text, on the one hand, and captured video and/or audio signals on the other hand, before transmission of the text and video and/or audio to a terminal for review.

The trial court correctly concluded that these claims require "displaying the text on the screen for real time review, but the text is not the same thing as the audio or video output, and as defendants argue, nothing in the claims requires displaying that output in real time." Findings of Fact and Conclusions of Law, slip op. at 20. For example, claim 12 recites displaying, visually or aurally, the audio or video signals associated with the text in real time, but does not recite a limitation that requires the aural or visual display of video or audio output in real time with associated text. '510 patent, col. 16, ll. 40-49 (emphases added). Thus, the trial court did not err in finding anticipation, as the prior art met all claim limitations.

Furthermore, like claim 32 of the '952 patent, the trial court did not err in invalidating claim 19 on the basis of the closed captioning systems art because a terminal could have included a TV monitor, and closed captioning systems obviously

associated audio signals with the text, as required by claim 19 of the '510 patent. Because a television screen or monitor could be a "terminal," the trial court did not err in finding claim 19 of the '510 patent anticipated by closed captioning systems.

The trial court additionally invalidated claim 16 of the '704 patent both because it was anticipated by the Andrews reference, dated September 1992, which discussed a Dallas courtroom CIC that showed a "LAN" (local area network), and because it was obvious. Findings of Fact and Conclusions of Law, slip op. at 21-22. Though raised in a motion for summary judgment, the trial court did not invalidate claim 16 through summary judgment because the only timely evidence came from a Phoenix courtroom CIC with only one computer terminal for each party. Id. at 695. According to the trial court, claim 16 "envisions a set-up in which each party has at least two computer terminals that receive the real time transcript from the CAT system." Id.

Thus, Engate now erroneously argues that the trial court improperly invalidated claim 16, after a bench trial, on the basis of no new evidence. However, in addition to the Phoenix courtroom CIC evidence, during summary judgment, the trial court also received the Andrews reference, dated September 1992 (after the critical date at that time), that discussed the Dallas courtroom CIC that showed a "LAN." At trial, the court learned that this prior art was available because the critical date moved a year (from March 1992 to March 1993). Thus, this evidence properly allowed the trial court to conclude that "there is no question that the system was capable of this, and it was readily apparent from the prior art that this could have been done successfully-thus making this modification (if that is what it was) obvious." Findings of Fact and Conclusions of Law, slip op. at 22. Thus, the trial court did not err in invalidating claim 16 of the '704 patent.

Finally, the trial court invalidated claims 1 and 3 of the '186 patent for indefiniteness. Findings of Fact and Conclusions of Law, slip op. at 26. The trial court invalidated claims 1 and 3 of the '186 patent because the specification did not supply structure corresponding to the "analysis means." Findings of Fact and Conclusions of Law, slip op. at 26. Because the record discloses no such structure, the trial court did not err in invalidating claims 1 and 3 of the '186 patent for indefiniteness.

IV.

Esquire cross-appeals the trial court's judgment that claims 4 and 6 of the '141 patent are valid. Findings of Fact and Conclusions of Law, slip op. at 24. The trial court considered the validity of claim 6 together with the validity of claim 4 of the '141 patent, which both depend from claim 1. The claims recite:

> 1. A transcription network utilized during a testimonial proceeding, the transcription network comprising:
> * * * *
> the remote terminal supporting communication of messages regarding the real time display <u>to the attorney terminal</u>.
>
> 4. The transcription network of claim 1 wherein the messages are <u>associated with portions of the text</u>.
>
> 6. The transcription network of claim 1 further comprising an additional terminal communicatively coupled to the converter but not communicatively coupled to attorney terminal.

'141 patent, col. 31, ll. 41-52, 58-59, 64-67 (emphases added). The trial court found claims 4 and 6 valid because the defendants did not offer "evidence that the Phoenix CIC permitted communication of messages associated with portions of the [real time] text." Findings of Fact and Conclusions of Law, slip op. at 24. However, the trial court erroneously read a limitation into claim 6 that is present only in claim 4. Engate concedes the trial court's error. However, Engate now contends that claim 6 is,

nevertheless, valid as the prior art teaches only communication back to the courtroom, but not specifically to an attorney's terminal. Esquire counters the prior art, nevertheless, does teach communication to attorney's terminal.

To the contrary, the record shows clearly and convincingly that the limitation reciting "communication of messages regarding the real time display to the attorney's terminal" was anticipated. '141 patent, col. 31, ll. 41-52. The trial court determined that Ms. Sanchez gave credible testimony that the DiscoveryZX software from Phoenix included work stations on the judge's bench and counsel table, Findings of Fact and Conclusions of Law, slip op. at 26, and that the networking permitted sending messages between the work stations with Novell software, Id. at 27. Ms. Sanchez' testimony was corroborated by Judge Strand. Id. at 28. As a result, though the trial court did not err in finding claim 4 of the '141 patent valid, it did err in not finding claim 6 of the '141 patent invalid as anticipated.

In conclusion, this court affirms the trial court's summary judgment rulings, the judgment finding the various claims of the various patents invalid, and the judgment holding claim 4 of the '141 patent valid, but reverses the trial court's judgment that claim 6 of the '141 patent is valid.